THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VIOLA GAGE, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ARTHUR UNGER, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* GUY DUREY et al., as Executors of CYRUS DUREY, Deceased, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* KATHARINE G. FOLMSBEE et al., Respondents.

Argued October 10, 1945; decided January 17, 1946.

Nathaniel L. Goldstein, Attorney-General (David Belkin, Orrin G. Judd, Warren H. Gilman and Saul A. Shames of counsel), for appellant. I. The deed to the State and other documentary evidence plainly shows that the title to the land in dispute passed to the State in 1918. II. The reservation in the deed to the State of the lands lying under the waters of East Canada and Green Lakes within lot sixty, refers to the land lying within the shore lines of the respective lakes at low water as depicted on the map in accordance with which the conveyance was made. The power company's right to flood the lands adjacent to these waters did not extend the bounds of those lakes so as to make the flooded land lands under the waters of said lakes. The reservation of land under waters meant the land below the low water mark or shore lines of the lakes as indicated on

the map referred to in the deed. (*Wheeler* v. *Spinola,* 54 N. Y. 377; *Smith* v. *Bartlett,* 180 N. Y. 360; *Shively* v. *Bowlby,* 152 U. S. 1; *Stewart* v. *Turney,* 237 N. Y. 117; *Ransom* v. *Shaeffer,* 153 Misc. 199, 243 App. Div. 858; *White* v. *Knickerbocker Ice Co.,* 254 N. Y. 152; *Calkins* v. *Hart,* 219 N. Y. 145; *Gouverneur* v. *National Ice Co.,* 134 N. Y. 355; *City of Geneva* v. *Henson,* 195 N. Y. 447; *Fulton Light, Heat & Power Co.* v. *State of New York,* 200 N. Y. 400; *Matter of Brookfield,* 176 N. Y. 138; *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341; *Elco Shoe Manufacturers* v. *Sisk,* 260 N. Y. 100, 103; *N. Y. Life Ins. & Trust Co.* v. *Hoyt,* 161 N. Y. 1.) III. The reservation to the power company of the right to flood the lands adjacent to the waters is additional proof of the plaintiffs' ownership to the disputed land. (*Bennett* v. *Town of Kent,* 241 N. Y. 385.)

*Alfred D. Dennison* and *Gideon G. W. Green* for respondents. I. The surrounding circumstances establish that it was not, in December, 1918, the intent of the grantor to convey or the intent of the grantee to take the area in question. (*Simon* v. *Etgen,* 213 N. Y. 589; *Gillet* v. *Bank of America,* 160 N. Y. 549; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *Lamb* v. *Norcross Brothers Co.,* 208 N. Y. 427; *Cordua* v. *Guggenheim,* 274 N. Y. 51; *Mullen* v. *Washburn,* 224 N. Y. 413; *Nicoll* v. *Sands,* 131 N. Y. 19; *Carthage T. P. Mills* v. *Village of Carthage,* 200 N. Y. 1; *Sanford* v. *Brown Brothers Co.,* 208 N. Y. 90.) II. All the defendants hold title by conveyances from the defendant Viola Gage who was in 1918 purchaser under contract of the whole area and in open and notorious possession thereof with structures thereon. Her title was superior to plaintiff who was put upon notice. (*Phelan* v. *Brady,* 119 N. Y. 587; *Italian Savings Bank* v. *LeGrange,* 169 App. Div. 120.) III. There is no presumption that title to land adjoining East Canada and Green Lakes goes to low water mark, because they are small, nonnavigable, inland, fresh-water lakes. Even if there were such a presumption, it may be rebutted by evidence showing a contrary intent. (*Smith* v. *City of Rochester,* 92 N. Y. 463; *Gouverneur* v. *National Ice Co.,* 134 N. Y. 355; *Land & Lake Association* v. *Conklin,* 182 App. Div. 546; *Wilcox* v. *Bread,* 92 Hun 9; *Ledyard* v. *Ten Eyck,* 36 Barb. 102; *Stewart* v. *Turney,* 237 N. Y. 117.) IV. The flowage rights of the power company in nowise affect the issues in this case.

LEWIS, J.   In these four actions in ejectment the People of the State of New York seek an adjudication of ownership and the right to immediate possession of four parcels of contiguous land in Fulton County, the title to which is claimed by the several defendants.   At Trial Term, where the four actions were tried together without consolidation, a jury returned a verdict for each defendant.   A judgment of dismissal entered upon the jury's verdict in each case has been unanimously affirmed at the Appellate Division.   The appeal by the plaintiff in each case is by our leave.

The land in controversy is located between the easterly shore line of East Canada Lake and the westerly shore line of Green Lake, south of the channel which connects those two bodies of water.   Title is claimed by the State under a deed dated December 10, 1918, from Durey Land & Lumber Company — to which reference will be made as the 1918 deed.   Upon the trial the State took the position, as it does upon this appeal, that the language employed to describe lands excepted from the 1918 deed was not ambiguous; that when read in its context the exception established as a matter of law that the land in suit was not land under the waters of East Canada Lake and Green Lake lying within lot sixty and, accordingly, that there was no issue of fact for the jury.   In support of the State's position the Attorney-General argued that the language employed in the 1918 deed to identify the excepted land should be construed, as a matter of law, to exclude from that conveyance only land under the waters of East Canada Lake and Green Lake below the shore lines as they are indicated on one of the maps to which there was specific reference in the deed.   The Trial Justice, having concluded that the language of such exception was ambiguous, overruled appropriate objections and denied motions by the Attorney-General, which in effect challenged the legality of that conclusion, and submitted to the jury as an issue of fact the question whether the subject land was under the waters of East Canada Lake and Green Lake and was thus excepted from the 1918 conveyance to the State.

As the case comes to us our chief problem is to determine whether in the fourth exception in the 1918 deed there was ambiguity which served as a legal basis for submitting to the

jury the question whether the subject land was land under the waters of East Canada Lake and Green Lake.

The relevant provisions of the 1918 deed to the State are as follows: " All that certain piece or parcel of land situate in the town of Caroga, County of Fulton and State of New York, being a part of lot sixty of the Glen, Bleecker & Lansing Patent, and being bounded and described as follows:

\* \* \* \* \* \* \*

" *Excepting* out of the lands above described *the following parcels:*

\* \* \* \* \* \* \*

" 4. *The land under the waters of East Canada and Green Lakes lying within said lot Sixty, and containing 141.56 acres of land.*

\* \* \* \* \* \* \*

" Subject to the perpetual right, privilege, and easement of the East Creek Electric Light and Power Company to construct, maintain and operate, and from time to time as may be necessary to rebuild a dam across the outlet of Lily Lake, so-called, and to raise thereby the waters in East Canada Lake, West Canada Lake, Lily Lake and Green Lake, and the inlets and outlets thereof, with the perpetual right, to flood by means of said dam the lands, lakes and ponds connected with the said Lily Lake, to the height specified in certain agreements \* \* \* granting to said Durey Land and Lumber Company the right to raise the waters of said lakes \* \* \* and to store and maintain the waters thereof at said level as the Power Company may from time to time desire, thereby flooding the lands of the Lumber Company; and to draw down the waters thereof from time to time as the Power Company may desire \* \* \*.

\* \* \* \* \* \* \*

" *The foregoing descriptions of lands and parcels excepted therefrom are made in accordance with survey made for the State of New York by J. B. and B. H. Koetteritz and maps thereof dated August, 1918 on file in the office of the Conservation Commission and numbered 981, 1095 and 1096.*" (Emphasis supplied.)

After the conveyance to the State effected by the 1918 deed, one Cyrus Durey delivered to Viola Gage a deed dated December 24, 1932, which purported to convey to the grantee premises

which include the land here in litigation, viz., that part of lot sixty "Bounded and described as follows, viz.: On the North by Canada Lake and Green Lake; on the East by lands of the State of New York; on the South by lands of Virtus Folmsbee and on the West by Canada Lake; it being the intention of this conveyance to convey all of the land now owned by first party lying East and West of the highway running from Green Lake to Wheelerville, and between the lands of Virtus Folmsbee on the South and the shores of Canada and Green Lake and the South Bank of the Channel connecting said lakes, on the North.''

Our examination of the record upon which rest claims by the State and the several defendants to land within the description last quoted above has led us to conclude that the fee title to that land passed to the State under the 1918 deed subject only to the right specifically reserved therein to East Creek Electric Light and Power Company to raise the level of various lakes and streams including East Canada Lake and Green Lake. We do not regard as ambiguous the language chosen to describe the lands conveyed to the State by the 1918 deed.

In reaching that conclusion we have been influenced by that recital in the deed which excepts from the conveyance to the State "The land under the waters of East Canada and Green Lakes lying within said lot Sixty, and *containing 141.56 acres of land*." The acreage of land mentioned in that exception is the total area comprising that portion of East Canada Lake lying within lot sixty, viz., 94.80 acres and the area of Green Lake (all of which lies within lot sixty) viz., 46.76 acres. Those areas and the acreage of each are shown on a map, numbered "1096", which is one of three maps mentioned in the 1918 deed as descriptive of "lands and parcels excepted" from that conveyance. It is thus seen that the exception from the conveyance contemplated by the 1918 deed was "141.56 acres of land" which lie "within said lot Sixty" and are described as being "under the waters of East Canada and Green Lakes." Additionally, in an apparent effort to assure certainty as to the location and limits of the land excepted, there was recorded in the deed the fact that "The foregoing descriptions of lands and parcels excepted therefrom are made in accordance with survey made

for the State of New York by J. B. and B. H. Koetteritz, and maps thereof dated August, 1918 on file in the office of the Conservation Commission and numbered 981, 1095 and *1096.*" (Italics supplied.)

No evidence was introduced by the defendants to establish that the map numbered " 1096," mentioned in the 1918 deed, was inaccurate or that the areas and boundaries of East Canada Lake and Green Lake, as they appear on that map, were erroneous. Indeed, there is undisputed testimony by a forest engineer and land surveyor employed by the State Conservation Commission that an unbroken line appearing on map No. 1096 defined the boundaries of East Canada Lake and Green Lake and indicated that such boundaries were fixed by actual survey. Obviously, by reason of the right expressly reserved to East Creek Electric Light and Power Company to raise and lower the waters of East Canada Lake and Green Lake, the level of those two lakes was not constant. We find nothing in the 1918 deed which excepts from the conveyance to the State those lands which may become submerged by the exercise of flowage rights expressly reserved to the Power Company. Proof that during substantial periods of each year the lands in suit were submerged will not serve as a basis in law to defeat the State's title to those lands which the record shows were not excepted from the 1918 deed to the State.

In each action the judgments should be reversed and a new trial granted, with costs to abide the event.

LOUGHRAN, Ch. J., CONWAY, THACHER, DYE and MEDALIE, JJ., concur; DESMOND, J., dissents on the ground that the question of whether the lands here involved were within the meaning of the exception in the deed was, on this record, a question of fact for the jury.

Judgments reversed, etc.